**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

JOHN SADLER,

       Plaintiff,

vs.                            Civil Action No. <u>6:13-cv-29542</u>

JAY HART, individually,
MICHAEL BOSLEY, individually,
JOE MARTIN, individually, BOB
NEWELL, individually, CITY OF
PARKERSBURG, a municipal
corporation, and JOHN DOE,

       Defendants.

## COMPLAINT

This complaint, brought pursuant to 42 U.S.C. Section 1983, 42 U.S.C. Section 1985, as well as the Fourth and Fourteenth Amendments to the United States Constitution, arises out of the Defendants' use of excessive force on the Plaintiff on or about August 13, 2013, in the City of Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia, as well as the development and implementation of a pattern or practice of excessive force which led to the said incident.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

## PARTIES

1.    The Plaintiff was at all times relevant hereto a resident of the City of Parkersburg, Wood County, West Virginia, within the Southern District of West Virginia.

2.    Defendant Jay Hart was at all times relevant hereto an officer of the Parkersburg Police Department, which is established, equipped and maintained by the

City of Parkersburg, and was at all times relevant hereto acting under the color of law and within the scope of his employment.  Said Defendant is named herein in his individual capacity.

3.      Defendant Michael Bosley was at all times relevant hereto an officer of the Parkersburg Police Department, which is established, equipped and maintained by the City of Parkersburg, and was at all times relevant hereto acting under the color of law and within the scope of his employment.  Said Defendant is named herein in his individual capacity.

4.      Defendant Joe Martin was at all times relevant hereto the Chief of the Parkersburg Police Department, which is under the City of Parkersburg, and was at all times relevant hereto acting under the color of law and within the scope of his employment.  Said Defendant is named herein in his individual capacity.

5.      Defendant Bob Newell was at all times relevant hereto the Mayor of the City of Parkersburg, West Virginia, and was at all times relevant hereto acting under the color of law and within the scope of his employment.  Said Defendant is named herein in his individual capacity.

6.      Defendant City of Parkersburg, a municipal corporation, is a political subdivision of the State of West Virginia.  *See* West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, *et seq.*

7.      Defendant John Doe is an officer of the Parkersburg Police Department, who is currently unidentified, but who was present in the room on August 13, 2013 while force was being applied against the Plaintiff, as alleged below.

## FACTS

8.     Plaintiff incorporates by reference the allegations in all previous

paragraphs.

9.     On or about June 2, 2011, attorney John Triplett drafted a letter to several

civil defense attorneys, as well as the Prosecuting Attorney of Wood County, on behalf

of his client, Officer Nathan Deuley of the Parkersburg Police Department, a copy of

which is attached hereto as Exhibit "1".

10.     The said letter advised that several years earlier, Officer Deuley attended

a departmental officers' meeting held on the second floor of the Parkersburg City

Building, and that most members of the Parkersburg Police Department were in

attendance.

11.     Officer Deuley and the other patrolmen were ordered to attend the

meeting.

12.     During the course of the said meeting, Defendant Mayor Bob Newell

advised Patrolman Dueley and others present that he was tired of small, frivolous

complaints against the police department.  He advised the officers to the effect that if

they were in a scuffle, with arrestees or pretrial detainees, to "beat their ass and put

them in the hospital."  Newell went on to state that he knew how to deal with the

insurance companies and for officers of the Parkersburg Police Department not to worry

about that issue.  He would "handle" the insurance companies.

13.     In the said letter, Officer Deuley stated that the said remarks from Newell

were "consistent with the behavior that [he] observed when he was a young patrolman

and under the supervision of [Defendant Chief] Martin.

14.     In the said letter, Officer Deuley further stated that Newell's remarks were also consistent with the admonition that Defendant Newell gave Officer Deuley when Newell was Chief of Police, that "Parkersburg police doesn't breed pussies."

15.     Upon information and belief, Mayor Newell, Chief Martin and the City of Parkersburg, developed, implemented, fostered and encouraged a policy, custom, pattern and practice of using excessive force against arrestees and pretrial detainees.

16.     Upon information and belief, Mayor Newell, Chief Martin and the City of Parkersburg continue to implement their policy of using excessive force.

17.     On August 13, 2013, the Plaintiff was in the custody of the Parkersburg Police Department following his arrest for DUI and was being processed by defendants Hart and Bosley.

18.     Defendant Hart stated in his "use of force report" that:

While attempting to process the [Plaintiff], [Plaintiff] became disorderly, yelling and screaming at officers and stood up from a seated position to his feet.  Both JD Hart and PFC Bosley gave several verbal commands for [Plaintiff] to sit down which he refused.  [Plaintiff] then approached officers in an aggressive manner and was forcibly taken to the floor by both officers and then lifted up and seated to the bench, which he still refused to stay seated.  JD Hart striked [sic] [Plaintiff] once in stomach area, with still no compliance from [Plaintiff] and then used pressure point on neck area till [sic] [Plaintiff] calmed down, seated his self [sic] and remained seated.

*See* Use of Force Report, a copy of which is attached hereto as Exhibit "2".

19.     The use of force by Defendant Hart against the Plaintiff was captured on surveillance video.

20.     The surveillance video, which is of good quality and which is continuous, shows that Defendant Hart suddenly and violently attacked the Plaintiff, choking him multiple times and punching him in the stomach.

4

21.     The video further shows that at the time the Plaintiff was attacked by Defendant Hart, the Plaintiff was handcuffed, with his arms behind his back, and was standing still, and was not physically resisting, assaulting, or attacking anyone.

22.     The video shows that at one point, the Plaintiff is choked to the point of appearing to be unconscious, and then is abruptly lifted back onto the bench - only to be choked again.

23.     Defendant Michael Bosley was present during the use of force by Defendant Hart.  Although the video does not show Defendant Bosley striking or choking the Plaintiff, he can be seen assisting Defendant Hart by placing his hands on the Plaintiff.  Defendant Bosley observed Defendant Hart striking and choking the Plaintiff, but failed to take any action to stop Defendant Hart, or to prevent an excessive and unnecessary amount of force being used on the Plaintiff.

24.     Upon information and belief, there was a third Parkersburg Police officer in the room observing the use of force.  This defendant, John Doe, also failed to take any action to stop Defendant Hart, or to prevent an excessive and unnecessary amount of force being used on the Plaintiff.

25.     Following the use of force against the Plaintiff, the Plaintiff was transporting to a hospital emergency room, and then was incarcerated.

26.     Defendant Hart charged the Plaintiff with a violation of W. Va. Code Section 61-5-17(a) "obstructing officer (threat to officer)", a charge which was later dismissed.  The Plaintiff was never charged with assault or battery of a police officer. The Plaintiff did not plead guilty to any criminal charge arising out of the incident captured on the surveillance video.

27.     Upon information and belief, following the public release of the surveillance video described above, Defendant Hart was reassigned to "desk duty" pending an internal investigation into whether Hart's use of force was appropriate.

28.     Defendant Martin gave a video interview to WTAP wherein he stated, "it appears that Mr. Sadler's not cooperative or confirming to the commands of the officers at the time of the processing" and that "to the public's eye, I'm sure it looks worse than what it truly is, even though he's handcuffed, officers are still permitted to use some types of force, but I hope that's what the impending investigation is going to reveal."

29.     Indeed, the Parkersburg Police Department allows for violent physical force to be used on subjects in situations where the subjects are not physically resisting or assaulting the officers.

30.     The PPD use of force continuum diagram, a copy of which is attached hereto as Exhibit "3", which is provided to every PPD officer, expressly provides for violent physical force to be used on subjects where an officer believes a subject has adopted an aggressive fighting stance.  This has resulted in a pattern and practice of PPD officers choking, striking and punching arrestees and pretrial detainees who were not physically resisting or assaulting officers, and who therefore were subjected to an unnecessary and excessive use of force.

31.     The use of force continuum diagram is bolstered by the PPD's customized use of force report form, which provides for the reporting of use of force incidents in situations where the subject's alleged behavior consisted of "obstructing - no assault". The form also provides for uses of force where the level of resistance leading to the use of force consisted of only "verbal non-compliance".

32.     Following the use of force on the Plaintiff described above, Defendant Hart, in his use of force report, checked the box containing the words "obstructing - no assault", as well as the level of alleged resistance by the Plaintiff as "Verbal Non-Compliance" prior to describing the force he used on the Plaintiff.  Defendant Hart did not check the boxes dealing with assaults on an officer or resisting arrest.  Nor did Defendant Hart check the boxes for alleged "Passive Resistance" or "Active Aggressive" resistance.  The description of force used by Hart following the Plaintiff's alleged "obstruction - no assault" consisted of all methods of "empty hand control" provided for in the form: "Soft (Pressure Points, Muscling, Joint Locks etc)" and "Hard (Hand or leg strikes)".

33.     Thus, admittedly, Defendant Hart engaged in violent physical force against the Plaintiff in response to the Plaintiff's alleged verbal non-compliance and alleged obstructing with no assault.

34.     Upon information and belief, Defendant Hart was trained, and was otherwise made aware, that such uses of force, as described above, and which were used on the Plaintiff, were appropriate under the PPD use of force policy.  Moreover, Defendants Bosley and John Doe were also led to believe that such uses of force were appropriate, and therefore did not engage to stop Defendant Hart from attacking the Plaintiff.

35.     There has been a past and continuing pattern and practice of similar excessive force incidents by the PPD.  They have paid settlements in multiple past incidents, involving Terry Ratliff, Timothy Mazza and Jerry Seabolt.  Other incidents have occurred where no lawsuit was filed and/or no complaint was ever made.

36.     Following the beating described herein which he suffered, the Plaintiff suffered mentally and physically.

<u>COUNT ONE - EXCESSIVE FORCE UNDER 42 U.S.C. 1983</u>
<u>VIOLATION OF THE FOURTEENTH AMENDMENT</u>

**(Defendant Jay Hart)**

37.     Plaintiff incorporates by reference all the allegations contained in the previous paragraphs.

38.     Defendant Hart used excessive force against the Plaintiff as described above in detail, and as was captured on surveillance video.

39.     When Defendant Hart punched the Plaintiff in the stomach and choked him repeatedly, he inflicted unnecessary and wanton pain and suffering on the Plaintiff, rendering him unconscious.

40.     At the time Defendant Hart attacked the Plaintiff, there was no need for the use of physical force to be used against the Plaintiff.

41.     Defendant Hart physically attacked the Plaintiff in response to mere words which were being uttered by the Plaintiff, and/or due to alleged noncompliance with Hart's orders, rather than in response to any physical assault, threat or resistance by the Plaintiff.

42.     Even if there was a need for force to be applied, Defendant Hart applied an excessive amount of force, as evidenced by the surveillance video, as well as the documented medical injuries suffered by the Plaintiff.

43.     The force used by Defendant Hart was not applied in a good faith effort to maintain and restore discipline, but rather was applied maliciously and sadistically for the purpose of causing harm.

44.     Defendant Hart's actions were objectively unreasonable, willful, wanton, intentional, malicious and done with a callous and reckless disregard for the Plaintiff's clearly established Fourteenth Amendment right to be free from excessive force.

45.     Plaintiff suffered harm, including personal injuries, extreme emotional distress, medical expenses, severe pain, and continues to suffer damages, and is entitled to recover damages for the same.

COUNT TWO - FAILURE TO INTERCEDE
UNDER 42 U.S.C. 1983

**(Defendant Michael Bosley and Defendant John Doe)**

46.     Plaintiff incorporates by reference all the allegations contained in the previous paragraphs.

47.     The Plaintiff was attacked, punched and choked by Defendant Hart, as described above, in the presence of Defendant Michael Bosley, and Defendant John doe - both PPD officers who were on duty and in-uniform.

48.     Defendants Bosley and Doe stood idly by while the Plaintiff's constitutional rights were violated by Defendant Hart, despite their affirmative duty to intercede on the Plaintiff's behalf.

49.     The surveillance video clearly shows that Defendants observed excessive force being used against the Plaintiff yet did nothing to protect him from Defendant Hart - despite having the ability to do so.

50.     These acts of omission by law enforcement officers are actionable to the same extent as are the acts of commission and make the officers directly liable under Section 1983.

51.     Plaintiff suffered harm, including personal injuries, extreme emotional distress, medical expenses, severe pain, and continues to suffer damages, and is entitled to recover damages for the same.

COUNT THREE - MUNICIPAL LIABILITY
UNDER 42 U.S.C. 1983

**(Defendant City of Parkersburg)**

52.     Plaintiff incorporates by reference all the allegations contained in the previous paragraphs.

53.     The City of Parkersburg, through Defendant Newell and Defendant Martin, instituted an official policy, custom, and practice of using excessive force against arrestees and pretrial detainees in violation of the Fourth and Fourteenth Amendments to the United States Constitution, as evidenced by the June 2, 2011 letter from John Triplett, a copy of which is attached hereto as Exhibit "1".  Specifically, Parkersburg police officers were instructed to and encouraged to inflict physical injuries, beatings, and to cause physical harm to people during the course of arrests and bookings to necessitate their hospitalization.  Upon information and belief, this policy, custom and practice remains in effect.

54.     The actions of the City of Parkersburg employees, as described in Counts One and Two above, were taken in furtherance of the said official policy, custom, and practice of using excessive force against arrestees and pretrial detainees.

55.     In furtherance of the said policy, custom and practice, Parkersburg police officers have committed numerous other civil rights violations in violation of the Fourth and Fourteenth Amendment rights to be free from excessive force, including, but not

limited to, the beating of Timothy Mazza in 2009[1], the beating of Terry Ratliff in 2008[2], and the beating of Jerry Seabolt in 2011[3].  Upon information and belief, there were other incidents of excessive force violations during this time period.

56.     In the past incidents, the City of Parkersburg has denied any wrongdoing, and to date has failed to remedy the problem of pattern and practice use of excessive force within the PPD.

57.     The policies and procedures of the PPD also contain a policy, custom and practice of using excessive force in that they allow for the use of violent physical force against a subject in response mere words or verbal non-compliance.  Additionally, the said policies allow for punching and choking subjects in the manner in which the Plaintiff was attacked, which is excessive for situations of alleged verbal non-compliance.

58.     The Mayor of Parkersburg, Defendant Bob Newell, who was primarily responsible for instituting the said policy, custom and practice, at all relevant times hereto had final policymaking authority in the area of use of force by the Parkersburg Police Department, and was himself a former Chief of Police of the Parkersburg Police Department.  The Chief of the Parkersburg Police Department, Joe Martin, was responsible for implementing the said policy, custom and practice, and has personally engaged in acts of excessive force in the past - a fact that PPD are well-aware of.

59.     As a direct and proximate result of the said policy, custom and practice, the Plaintiff was damaged on August 13, 2013 when excessive force was used against him as described in Counts One and Two above for which he is entitled to recover.

---

[1] Timothy Mazza's excessive force lawsuit was settled by the City of Parkersburg for $100,000.00.

[2] Terry Ratliff's excessive force lawsuit was settled by the City of Parkersburg for $70,000.00.

[3] Jerry Seabolt's excessive force lawsuit was settled by the City of Parkersburg for $135,000.00.

<u>COUNT FOUR - SUPERVISORY LIABILITY</u>
<u>UNDER 42 U.S.C. 1983</u>

**(Defendant Bob Newell, Defendant Joe Martin)**

60.     Plaintiff incorporates by reference all allegations contained in previous paragraphs.

61.     Mayor Newell and Chief Martin had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the Plaintiff; namely using excessive force against arrestees and pretrial detainees.  Their knowledge is evidenced by the Triplett Letter, attached hereto as Exhibit "1", as well as by the documented beatings of Timothy Mazza, Terry Ratliff and Jerry Seabolt and was furthermore codified into their use of force policy by allowing the use of physical force in situations where it is unnecessary and in violation of the U.S. Constitution.

62.     The said supervisors' response to that knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of, the practices of using excessive force.

63.     As a direct and proximate result of the the said supervisors' inaction the Plaintiff suffered constitutional violations and was damaged, as described in Counts One, Two and Three above, for which he is entitled to recover.

<u>COUNT FIVE - CONSPIRACY TO DEPRIVE CIVIL</u>
<u>RIGHTS UNDER 42 U.S.C. 1985</u>

**(Defendant Bob Newell, Defendant Joe Martin)**

64.     Plaintiff incorporates by reference all allegations made in the previous paragraphs.

65.     Defendant Bob Newell and Defendant Joe Martin, as separate individuals involved in law enforcement in Parkersburg, West Virginia, together conspired to deprive arrestees and pretrial detainees, including the Plaintiff herein, of their clearly established right to be free from excessive force under the Fourth and Fourteenth Amendments to the United States Constitution.

66.     The said conspiracy is evidenced by the Triplett Letter, a copy of which is attached hereto as Exhibit 1", which states that the said individuals conducted and participated in a meeting wherein law enforcement officers were ordered to unlawfully beat and hospitalize arrestees and pretrial detainees.

67.     Multiple current and former Parkersburg Police officers have attested to the veracity of the Triplett Letter, as well as to the existence of a use of force policy which was, and remains, in blatant disregard for Fourth Circuit excessive force case law: namely the right not to be subjected to physical attack in response to mere words or verbal noncompliance, and the right not to be punched and choked by police officers.

68.     As a direct and proximate result of the said conspiracy, the Plaintiff was injured, as alleged in Counts One and Two above, and is entitled to recover for his injury against any one or more of the conspirators pursuant to 42 U.S.C. 1985(3).

## **PRAYER**

WHEREFORE, based on the above stated facts, the Plaintiff respectfully requests that this Honorable Court award:

1.     Damages against the Defendants in an amount to be determined at trial which will fairly and reasonably compensate the Plaintiff for:

a.     Past, present and future medical expenses;

b.      Past, present and future pain and suffering;

c.      Loss of enjoyment of life;

d.      Psychological and emotional distress;

e.      Any other compensatory damages to be proven at trial;

f.      Punitive damages against the individual Defendants in an amount to be

        determined at trial;

g.      Reasonable attorney fees and costs;

h.      Any other relief that this Court deems is just and fair;

i.      All other damages provided by law;

j.      Injunctive relief requiring appropriate training, supervision and discipline in

        order to remedy all constitutional deprivations which the Plaintiff suffered;

k.      Declaratory judgment relief establishing the Defendants' above-described

        conduct violates the Plaintiff's clearly established constitutional rights.

**PLAINTIFF DEMANDS A TRIAL BY JURY**


                                        JOHN SADLER
                                        By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
Martha J. Fleshman (WV Bar No. 8542)
JOHN H. BRYAN, ATTORNEYS AT LAW
611 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

for the Plaintiff


/s Paul V. Morrison, II
Paul V. Morrison, II (WV Bar No. 7753)
WINDOM LAW OFFICES
202 East Main Street
Harrisville, WV 26362
(304) 643-4440
Fax: (304) 643-2947
rwindom@zoominternet.com


for the Plaintiff